UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
GARY LA BARBERA and FRANK FINKEL, *Trustees of Local 282 International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds*,

                      Plaintiffs,                      **REPORT AND RECOMMENDATION**

   -against-

                                                                       08-CV-3387 (SJ) (JMA)

FRANK J. BATCHELDER TRANSPORTATION LLC,

                      Defendant.
-----------------------------------------------------------------------------X

A P P E A R A N C E S:

Avram H. Schreiber
40 Exchange Place, Suite 1300
New York, NY 10005
212-425-7670
     *Attorney for Plaintiff*

**AZRACK**, **United States Magistrate Judge:**

Plaintiffs Gary LaBarbera and Frank Finkel ("plaintiffs") commenced this action as trustees of the Local 282, International Brotherhood of Teamsters ("Local 282") Welfare, Pension, Annuity, Job Training and Vacation/Sick Leave Trust Funds (the "Funds") against defendant Frank J. Batchelder Transportation LLC ("FJBT" or "defendant") pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186, to recover delinquent contributions and associated payments allegedly owed to the Funds. Although FJBT was properly served with copies of the summons and complaint via personal service on

1

September 22, 2008 (Dkt. No. 3), it failed to appear or otherwise defend against the action, and plaintiffs moved for a default judgment on October 28, 2008 (Dkt. No. 4). By Order dated October 29, 2008, the Honorable Sterling Johnson, United States District Judge, referred plaintiffs' motion for default judgment against FJBT to me for a report and recommendation.

For the reasons set forth below, I respectfully recommend that plaintiffs' motion for default judgment be granted and that plaintiffs be awarded $21,714.96 in unpaid contributions, $2,942.25 in interest, $6,951.28 in liquidated damages, $550.65 in costs, and $2,506.76 in attorneys' fees, for a total award of $34,665.76.

## I. BACKGROUND

Plaintiffs are trustees of the Funds, which and are jointly-administered multi-employer benefit plans, within the meaning of ERISA. (Compl. ¶¶ 2; see also A. Schreiber Aff. Supp. Default J. ¶ 6 ("Schreiber Aff.").) The Funds were established by and are maintained pursuant to a collective bargaining agreement ("CBA") in force between Local 282 and FJBT from July 1, 2006 through June 30, 2009. (Compl. ¶ 3; see also Schreiber Aff. ¶ 9.) Under the CBA, defendant is required, *inter alia*, to remit contributions to the Funds based on the number of Local 282 members it employs and the number of hours worked by each member employee. (Compl. ¶ 8; Schreiber Aff. Ex. B §§ 5, 12 ("CBA").) The CBA also requires defendant to submit weekly remittance reports to Local 282 which indicate the amounts owed to each fund for the prior week. (Schreiber Aff. ¶ 10.)

Defendant failed to make timely payments as required. (Compl. ¶¶ 9–10; 18; Schreiber Aff. ¶ 14; 35.) On May 18, 2008, plaintiffs notified defendant that based on remittance reports, it owed the funds a total $14,094.60 due for the period between October 20, 2007 through February 7, 2008 and demanded payment. (Schreiber Aff. Ex. G.) On June 18, 2008, defendant issued the

Funds five checks totaling $12,362.18. (Schreiber Aff. ¶ 16, Ex. E). On August 5, 2008, defendant's paid the Funds an additional, $679.26, which was specifically credited towards contributions due for the week ending October 20, 2007. Plaintiffs credited these payments to the total delinquency, however, the two payments did not fully cover the outstanding contributions. (Schreiber Aff. ¶ 15–16.) On October 15, 2008, plaintiffs issued a second notice to defendant indicating that it had not fully paid the initial delinquency and that it also owed further contributions for the period between February 16 through July 26, 2008. (Schreiber Aff. Ex. E.). To date, defendant has not remitted those contributions. (Schreiber Aff. ¶ 19.) Plaintiffs commenced this action on August 19, 2008 to recover these amounts in addition to pre-judgment interest, liquidated damages, attorneys' fees and costs, and an injunction. (Schreiber Aff. ¶ 17.)

## II. DISCUSSION

### A. Liability

Defendant's default amounts to an admission of liability and all of the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true. See Greyhound Exhibit Group, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (internal citation omitted); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The complaint alleges that defendant entered into agreements with Local 282 under which defendant was obligated to make contributions to the Funds and that defendant failed to make such contributions in a timely manner. Thus, the complaint establishes the elements of liability required to state a claim under ERISA Section 515, 29 U.S.C. § 1145, and LMRA Section 301. 29 U.S.C. § 185. I therefore respectfully recommend that plaintiffs' motion for default judgment be granted.

**B. Remedies**

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). Rather, a court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. Id. (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, as long as the Court has "ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (citations omitted).

Plaintiffs seek unpaid contributions, prejudgment interest, liquidated damages, attorneys' fees and costs, and an injunction under ERISA. In support of this request, plaintiffs have submitted the affirmation of their attorney, Avram Schreiber ("Schreiber Aff.") along with relevant portions of the CBA, the defendant's remittance reports for the delinquency periods, copies of checks the defendant issued to the Funds, delinquency notices from plaintiffs to defendant, and contemporaneous records reflecting the attorneys' fees and costs incurred in the course of prosecuting this action. I consider these submissions a sufficient basis upon which to determine the appropriate award and I will discuss each form of relief in turn.

**1.** *Unpaid Contributions*. Plaintiffs seek a total of $23,073.98 is unpaid principal pursuant to 29 U.S.C. § 1132(g)(2). I have carefully reviewed the remittance reports prepared by the defendant and submitted to the Court by the plaintiffs.[1] Based on these reports, I find that defendant failed to timely remit a total of $34,756.40 in Fund contributions owed for the period

---

[1] Plaintiffs submitted a total of forty-five weekly remittance reports each indicting the number of member employees defendant employed over the given week, the number of hours worked by each employee, and the corresponding principal contribution amount owed to each Fund as well as to an additional benefit plan that is not covered by this action. To calculate the total unpaid principal, I reviewed each report and totaled the relevant figures.

between October 20, 2007 through July 26, 2008. However, defendant has already paid a total of $13,041.44 towards this sum.[2] Therefore, I respectfully recommend that plaintiffs be awarded $21,714.96 in unpaid contributions.

  **2. *Interest on Late-paid and Unpaid Contributions*.** Next, plaintiff requests $2,942.25 in interest on the unpaid and late-paid contributions. ERISA mandates an award of prejudgment interest on unpaid contributions. 29 U.S.C. § 1132(g)(2). Interest is to be calculated at the rate provided for in the benefit plan, or, if none, the Federal Short Term rate, as set by the Treasury Department, plus three percentage points. 29 U.S.C. § 1132(g)(2)(B); 26 U.S.C. § 6621. Here, the relevant trusts agreements, which are incorporated into the CBA by reference, set the interest rate at 18% per annum or .049315% per day. (Schreiber Aff. Ex. F.) The proper calculation of interest requires a separate calculation for each delinquent week to account for the varying due dates of the contributions. Additionally, the interest calculation must take account of defendant's two late payments to each of the funds, one on June 18, 2008 and one on August 5, 2008. Therefore, to calculate the interest for late-paid contributions, the rate of interest must be applied from the due date of each weekly payment up to the point of payment. To calculate the interest for unpaid contributions, the rate of interest must be applied from each weekly due date up to and including October 28, 2008, the last date for which plaintiffs seek interest. Here, plaintiffs' submissions sufficiently demonstrate that they are entitled to the requested interest.[3] Accordingly, I respectfully recommend that plaintiffs be awarded $2,942.25 in interest on unpaid and late-paid contributions.

---

[2] This sum reflects the $12,362.18 in checks that defendant issued on June 18, 2008 (Schreiber Aff. Ex. E) and the $679.26 defendant paid to the Funds on August 5, 2008 specifically for the contributions owed for the week ending October 20, 2007. (Schreiber Aff. ¶ 15, Ex. D).

[3] Indeed, my independent interest calculations indicate that plaintiffs are actually entitled to the slightly greater sum of $3,137.15 in interest.

**3.** *Liquidated Damages*. Plaintiffs also seek $7,087.29 in liquidated damages. ERISA Section § 502(g)(2)(C) entitles plaintiffs to the greater of (i) interest paid on the unpaid contributions or (ii) liquidated damages provided for under the plan, so long as they do not exceed twenty percent of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Here, the CBA entitles plaintiffs to the full 20% of unpaid contributions as liquidated damages. (Schreiber Aff. Ex. C at 31.) Therefore, I respectfully recommend that plaintiffs be awarded 20% of the principal late-paid and unpaid contributions owed to the ERISA plans for a total of $6,951.28 in liquidated damages.

**4.** *Costs.* Plaintiffs request $550.65 in costs pursuant to ERISA Section 502(g)(2)(D), which directs the Court to award reasonable costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs have substantiated their request for costs with invoices indicating that a filing fee of $350.00 and a process service fee of $90.00 were incurred on August 19, 2008 and that various photocopying and postage fees were incurred between September 24, 2007 and October 28, 2008. (Schreiber Aff. Ex. V at 13–16.) Having reviewed the invoices, I find plaintiffs' assessment of costs reasonable and respectfully recommend an award of $550.65 in costs.

**5.** *Attorneys' Fees*. Plaintiffs also request attorneys' fees for services rendered between September 24, 2007 and October 28, 2008. (Schreiber Aff. Ex. V at 1–13.) ERISA mandates the award of attorneys' fees. 29 U.S.C. § 1132(g)(2)(D). In the Second Circuit, attorney's fees for federal claims are determined according to the "presumptively reasonable fee" approach, which is calculated by multiplying a reasonable hourly rate by a reasonable number of expended hours. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186–90 (2d Cir. 2008). The Court has "considerable discretion" in determining the presumptively reasonable fee, however, it should "bear in mind all of the case-specific variables

that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Id. at 190 (emphasis in original). Ultimately, the district court should be guided by what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. Id. at 184, 192.

The fee applicant bears the burden of establishing the reasonableness of the hourly rate and the number of hours expended. New York State Teamsters Conference & Ret. Fund v. Erick Sanitation, No. 92-CV-0292, 1992 WL 246880, at *4 (N.D.N.Y. Sept. 18, 1992). However, the district court may also rely upon its own knowledge of "the prevailing market rates in the relevant community for similar services for lawyers of reasonably comparable skill, experience and reputation." Chambless v. Masters, Mates, and Pilots Pension Plan, 885 F.2d 1053, 1058–59 (2d Cir. 1989) (internal citation and quotation marks omitted). In determining the reasonableness of the hours expended, the Court must assess "the value of the work product of the particular expenditures to the client's case." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998). "If the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation[.]" Id.

Plaintiffs requests $7,318.50 in attorneys' fees. They support their request with contemporaneous time records that detail the tasks their attorneys and paralegals completed for this case and the number of hours expended on each task. Partner Avram Schreiber, admitted in 1969, billed 8.8 hours at $300 per hour. Associate Womee Lee, admitted in 2004, billed 0.3 hours at $80 per hour. Associate Cristina Cruz, admitted in 2005, billed 0.6 hours at $225 per hour. Associate Kimberly Oberhauser, admitted in 2008, billed 15.5 hours at $225 per hour and 8.5 hours at $80. The lower rates charged by the attorneys are for clerical work. (Schreiber Aff. ¶ 38

n. 1.)  Paralegal Denise Dees billed 4.4 hours at $80 per hour.  (Schreiber Aff. ¶ 38, Ex. V at 1–13.)

Applying the Arbor Hill standard, I find these rates unreasonable.  In LaBarbera v. D & R Materials Inc., No. 08-CV-146 (FB) (JMA), 2008 WL 5054642 (E.D.N.Y. Dec. 1, 2008), in which the same counsel represented the instant plaintiffs in a similar ERISA default judgment case, Judge Block approved a rate of $275 per hour for Mr. Schreiber's time.  Id. at *4; see also LaBarbera v. J & A Concrete Corp., No. 07-CV-1731 (DLI) (JO), 2008 WL 918244, at *2–3 (E.D.N.Y. Apr. 1, 2008).  Judge Block also found that the typical rate awarded for the work of junior associates in this district ranged from $100-$150 per hour.  See id. at *5 (colleting cases).  Finally, Judge Block approved a rate of $70 per hour for the time of the same paralegal as in the instant case.  See id. at *4.

Like D & R Materials Inc., the instant case raised no novel or complex issues of law and was unopposed and there is no basis for an upward departure from the most recently approved rates.  Therefore, consistent with recent decisions, I respectfully recommend that plaintiffs be awarded attorney's fees at a rate of $275 per hour for Mr. Schreiber's time.  Since the two associates who assisted Mr. Schreiber were both recently admitted and therefore have lesser experience and expertise, I recommend that plaintiffs be awarded $125 per hour for Ms. Cruz' time and $100 per hour for Ms. Oberhauser's time.  Finally, I recommend that plaintiffs be awarded $70 per hour for the efforts of Ms. Lee, who is an attorney but performed only clerical work for this action, and Ms. Dees, the paralegal.

Counsel avers that a total of 38.1 hours were spent on this case.  (See Schreiber Decl., Ex. V at 13.)  After carefully scrutinizing counsels' time records, I find that this time expenditure was excessive.  First, counsel billed approximately 1.67 hours for time spent on contribution periods

that are not the subjects of this action. (See Schreiber Aff. Ex. V at 1–2.) The expended hours should accordingly be reduced to 36.43 hours. Additionally, defendant is in default and this motion is undisputed; the activities of the case, as reflected by entries on the docket sheet, were simple and few; no novel or complex issues of law were implicated; the large number of counsel's similar ERISA cases[4] demonstrates that he is well-versed in this area of law; and many entries in the billing records appear duplicative or unnecessary.[5] Additionally, plaintiffs' submissions contain significant errors[6] and the complaint appears largely boilerplate.

Accordingly, I find that an additional forty-five percent reduction in total hours, from 36.43 to approximately 20 hours, is necessary to correct for the unreasonable amount of time expended by counsel on this case. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 266, 237 (2d Cir. 1987) (finding across-the-board percentage reduction in compensable hours reasonable when the application for fees is voluminous); D & R Materials Inc., 2008 WL 5054642 at *6 (approving 45% reduction in hours expended in ERISA default litigated by the same attorneys on behalf of the same plaintiffs); see also LaBarbera v. David Liepper & Sons, Inc., No. 06-CV-1371 (DLI) (JMA), 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (finding a total of 17.17 hours reasonable in a similar ERISA default case). Therefore, I recommend reducing Schreiber's hours to 4.25 hours, Lee's hours to 0.165 hours, Oberhauser's hours to 8.525 attorney hours and 4.675 clerical hours, and Dees' hours to 2.09 hours. I recommend reducing Cruz's hours to zero hours

---

[4] For example, a review of the court's Electronic Case Filing ("ECF") system reveals that Mr. Schreiber is counsel of record in over twenty ERISA cases filed on behalf of the instant plaintiffs in this district in 2008 alone.

[5] For example, there are multiple charges for "review" or defendant's bank account, surety status, and the status of the CBA. (See generally Schreiber Aff. Ex. V.)

[6] For example, paragraphs 25 and 27 of Avram Schreiber's Affirmation in support of Default Judgment are identical except for one date and one amount. Clearly, both paragraphs cannot be correct and only one or the other was intended to be included in the final draft. Paragraph 29 indicates the "days delinquent" for a certain weekly payment as 2,414. Paragraph 32 contains a mathematical error which miscalculates the amount due for the week ending June 14, 2008. Paragraph 38 includes extraneous information about several billing rates that are inapplicable to this case. The affirmation also refers to principal contributions that were paid late as having never been paid.

as the only time she spent on this case was forty-eight minutes drafting a letter to FJBT regarding reports and payments for weeks outside the delinquency period covered by this action. (See Schreiber Aff. Ex. V at 1.) Applying these hours expended at the rates recommended above, I respectfully recommend that plaintiffs be awarded $2,506.76 in attorneys' fees.

**6. *Injunctive Relief*.** Plaintiffs seek a permanent injunction enjoining the defendant from any further or future violations of the CBA. A court may issue an injunction on a motion for default judgment provided that the moving party shows that "(1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Cablevision of S. Conn. v. Smith, 141 F. Supp. 2d 277, 287–88 (D. Conn. 2001). The first prong of this test is met because § 1132(a)(3) provides that benefit plan fiduciaries may commence an action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

However, violation of the statute alone does not lead to injunctive relief. Town of Huntington v. Marsh, 859 F.2d 1134, 1143 (2d Cir. 1988). The prerequisites for the issuance of an injunction referred to in Smith require plaintiffs to demonstrate irreparable harm and the absence of an adequate remedy at law. See Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir. 1999) (citing New York State NOW v. Terry, 886 F.2d 1339, 1362 (2d Cir. 1989)). Plaintiffs allege irreparable damage in bare terms (see Schreiber Aff. ¶ 42), but submit no evidence that defendant has a history of failing to make required contributions or that plaintiffs will be unable to collect a money judgment from defendant. Because I see no evidence that plaintiffs' remedy at law is insufficient, I respectfully recommend that plaintiffs' request for injunctive relief be denied. See La Barbera v. LES Sub-Surface Plumbing, Inc., No. 06-CV-3343 (NG) (KAM), 2008 WL

906695, at *10 (E.D.N.Y. Apr. 3, 2008) (monetary damages deemed sufficient to deter future ERISA contribution violations); La Barbera v. Interstate Dev. Group, No. 07-CV-2052 (ARR) (MDG), 2008 WL 858985, at *9 (E.D.N.Y. Mar. 31, 2008) (same).

### III. CONCLUSION

For the foregoing reasons, I respectfully recommend that plaintiffs' motion for default judgment against the defendant be granted and that plaintiffs be awarded $21,714.96 in unpaid contributions, $2,942.25 in interest, $6,951.28 in liquidated damages, $550.65 in costs, and $2,506.76 in attorneys' fees, for a total award of $34,665.76.

Plaintiffs are hereby ordered to serve a copy of this report and recommendation on defendant and to promptly file proof of service by ECF. Any objections to this report and recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of the date of entry of this report and recommendation. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

SO ORDERED.

Dated: January 8, 2009
      Brooklyn, New York

                                                      /s/
                                     JOAN M. AZRACK
                                     UNITED STATES MAGISTRATE JUDGE